[No. C031681. Third Dist. Mar. 29, 2000.]

FAMILIES UNAFRAID TO UPHOLD RURAL EL DORADO COUNTY et al., Plaintiffs and Appellants, v.
EL DORADO COUNTY BOARD OF SUPERVISORS et al., Defendants and Respondents;
COOK RANCH PARTNERS, Real Party in Interest and Respondent.

506

508

## COUNSEL

Mackenroth, Ryan & Fong, Randy L. Barrow; Law Office of Thomas P. Infusino and Thomas P. Infusino for Plaintiffs and Appellants.

Louis B. Green, County Counsel, and Edward L. Knapp, Chief Assistant County Counsel, for Defendants and Respondents.

Ellman, Burke, Hoffman & Johnson, Howard N. Ellman and Kenneth N. Burns for Real Party in Interest and Respondent.

## OPINION

**DAVIS, J.**—In this environmental land use dispute, the City of Plymouth, the Foothill Conservancy, and an unincorporated association, Families Unafraid to Uphold Rural El Dorado County (known by its acronym, The Future) (collectively, plaintiffs), appeal from two orders denying their motions for attorney fees under the private attorney general theory of Code of Civil Procedure section 1021.5 (hereafter, section 1021.5).

In denying the two motions for attorney fees, the trial court concluded that plaintiffs had failed to show that their financial burden in bringing suit was

out of proportion to their financial interest in the suit. We conclude the trial court abused its discretion in this respect. We also conclude that plaintiffs' nonfinancial interests in the suit, including their aesthetic interests, are a relevant factor to consider in whether to award attorney fees under section 1021.5. We therefore reverse and remand for the trial court to consider plaintiffs' nonfinancial interests and, if the cost of litigation is out of proportion to plaintiffs' nonfinancial interests, to determine the amount of attorney fees to award.

## BACKGROUND

Plaintiffs' attorney fee requests arise from a lawsuit they instituted against El Dorado County and its board of supervisors (County). In that suit, plaintiffs alleged that County failed to comply with its draft general plan and with the California Environmental Quality Act (CEQA) in approving the Cinnabar residential subdivision project. Cook Ranch Partners (Cook), the real party in interest, is Cinnabar's developer.

Cinnabar is an upscale residential subdivision project encompassing 566 lots on 7,868 acres of land (about 12 square miles), with an equestrian theme and nearly 2,900 acres of open space. The project site is in the southwestern portion of County and is currently used for grazing. The site is roughly six miles in length (north to south) and two miles in width. The northern boundary of the project site is about four miles south of the town of El Dorado. The southern boundary is about six miles north of the City of Plymouth (which is in Amador County).

In plaintiffs' lawsuit against County, the trial court ruled in County's favor, but we reversed. We concluded, in the published part of our opinion, that Cinnabar was inconsistent with the land use element of County's draft general plan, which basically precluded "leapfrog" development. (*Families Unafraid to Uphold Rural etc. County v. Board of Supervisors* (1998) 62 Cal.App.4th 1332, 1335, 1339-1341 [74 Cal.Rptr.2d 1] (*Future I*).) In the unpublished part of our opinion, we concluded that Cinnabar was inconsistent with the noise element of the draft general plan and that one of the County's findings regarding consistency with the agriculture and forestry element was not supported by substantial evidence; we also found five CEQA deficiencies encompassing the rejection of various project alternatives, the analyses regarding mining contamination and wildlife habitat, and the environmental impact report's responses to public inquiries about the County's erosion plan and Cook's compliance history with mitigation measures. (*Future I, supra,* 62 Cal.App.4th at p. 1335.)

Plaintiffs first moved for their attorney fees for the appeal, and then moved for their trial fees. Aside from granting the City of Plymouth $1,650 for attorney fees on appeal (a matter not at issue here), the trial court denied both motions. This appeal ensued.

DISCUSSION

1. *Governing Principles and Standard of Review*

"Section 1021.5 codifies the 'private attorney general' doctrine under which attorney fees may be awarded to successful litigants. [Fn. omitted.] 'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]' (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*).) Entitlement to fees under section 1021.5 requires a showing that the litigation: '(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter.' (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].)" (*California Licensed Foresters Assn.* v. *State Bd. of Forestry* (1994) 30 Cal.App.4th 562, 568-569 [35 Cal.Rptr.2d 396] (*Foresters Assn.*).) In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring. (See *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17 [232 Cal.Rptr. 697]; *Foresters Assn., supra,* 30 Cal.App.4th at p. 570.)[1]

The trial court's determination regarding the above noted three criteria of section 1021.5 lies within the court's discretion. (*Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1666 [39 Cal.Rptr.2d 189] (*Blythe*).) The trial court is to assess the litigation realistically and determine from a practical perspective whether these criteria have been met. (*Hewlett v.*

---

[1]Section 1021.5 provides in relevant part: "Upon motion, a court may award attorney[] fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

*Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 544 [63 Cal.Rptr.2d 118] (*Hewlett*).)

 The trial court's discretion may not be disturbed on appeal absent a showing that the court abused it—for example, where the record establishes there is no reasonable basis for the determination. (*Blythe, supra,* 32 Cal.App.4th at p. 1666.) In reviewing the trial court's decision, we must pay " 'particular attention to the trial court's stated reasons in denying or awarding fees and [see] whether it applied the proper standards of law in reaching its decision.' " (*Hewlett, supra,* 54 Cal.App.4th at p. 544.) "The pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298 [255 Cal.Rptr. 704] (*Drew*).)

County and Cook on appeal do not dispute, and indeed cannot dispute, that plaintiffs' action (i.e., *Future I*) enforced an important public right and conferred a significant public benefit. County requested that we publish our decision in *Future I*, explaining that public agencies, project applicants, and citizens statewide would find the decision useful because it clarifies the extent to which a public agency and project applicant must comply with particular provisions of a general plan. We agreed and granted County's request.

Moreover, County and Cook on appeal do not dispute the necessity of private enforcement here. Nor again could there be any such dispute. " 'Where suit is brought against governmental agencies and officials [as here], the necessity of private enforcement is obvious. In such situations private citizens alone must " 'guard the guardians' " and the disparity in legal resources is likely to be greatest.' " (*Drew, supra,* 207 Cal.App.3d at p. 1299.)

That leaves the criterion of financial burden of private enforcement. The trial court denied plaintiffs' two motions for attorney fees on this basis. The principal issue here is whether the trial court abused its discretion in making this determination.

### 2. *Motion for Attorney Fees for Appeal of Future I*

 We first consider the criterion of financial burden of private enforcement as it relates to plaintiffs' motion for attorney fees for the *Future I* appeal. In considering this issue, we must initially clarify the

applicable legal standard regarding this criterion and then we can examine the record.

■ The "financial burden of private enforcement" criterion of section 1021.5 (hereafter, financial burden criterion) is met " 'when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." ' " (*Woodland Hills, supra,* 23 Cal.3d at p. 941, quoting with approval a decision from this court, *County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71] (*County of Inyo*); *Blythe, supra,* 32 Cal.App.4th at p. 1667.) The "personal interest" at issue in our decision in *County of Inyo,* and quoted with approval in *Woodland Hills,* was "local environmental values" which Inyo County "sought to preserve for the benefit of its present and future inhabitants." (*County of Inyo, supra,* 78 Cal.App.3d at p. 90.) Inyo County had successfully challenged the sufficiency of an environmental impact report that Los Angeles had submitted regarding its plan to extract and export groundwater from the county. In denying Inyo County's request for attorney fees under the "private attorney general" theory, we concluded in *County of Inyo,* "[t]he victory won by the county . . . bulked large enough to warrant the cost of winning it. The necessity for enforcement by Inyo County did not place on it 'a burden out of proportion to [its] individual stake in the matter.' " (*Ibid.,* quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 46, fn. 18 [141 Cal.Rptr. 315, 569 P.2d 1303].)

Four years after its decision in *Woodland Hills,* the California Supreme Court, in *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704] (*Press*), stated in a footnote, "[a]s the statute makes clear, subdivision (b) of section 1021.5 [i.e., the financial burden criterion] focuses not on [a] plaintiff['s] abstract personal stake, but on the financial incentives and burdens related to bringing suit. Indeed, in the absence of some concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action." (*Id.* at p. 321, fn. 11.) Many courts, including this one, have reiterated this statement. (*Blythe, supra,* 32 Cal.App.4th at p. 1667, quoting *Press*; see also *Luck v. Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 30 [267 Cal.Rptr. 618]; *Phipps v. Saddleback Valley Unified School Dist.* (1988) 204 Cal.App.3d 1110, 1122-1123 [251 Cal.Rptr. 720]; *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 229, fn. 13 [226 Cal.Rptr. 265]; *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 751 [246 Cal.Rptr. 285]; *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 114-115 [212 Cal.Rptr. 485].)

Thus, the California Supreme Court, by *Woodland Hills'* approval of *County of Inyo*, has defined the financial burden criterion in terms of a "personal interest" that can include nonfinancial environmental interests involved in bringing suit. Furthermore, the California Supreme Court, by way of footnote in *Press*, has observed that the personal interest portion of the financial burden criterion focuses on financial incentives related to bringing suit and not on a plaintiff's "abstract personal stake." While the traditional focus of personal interest, then, is on financial interest, personal interest can also include specific, concrete, nonfinancial interests, including environmental or aesthetic interests.

This view of *Woodland Hills* and *Press* makes sense. We can envision nonfinancial personal interests of sufficient strength and specificity to prompt an individual to pursue vigorously a suit notwithstanding a substantial financial burden in doing so. After all, how often has litigation been pursued as "a matter of principle." Not "principal," we note.

Recently, the First Appellate District, in *Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961 [88 Cal.Rptr.2d 565] (*Williams*), concluded explicitly that a plaintiff's personal interest under the section 1021.5 financial burden criterion can be an aesthetic interest.

*Williams* involved an owner and resident of a Victorian home in San Francisco—on a block containing only Victorian structures—who sought to prevent his next door neighbor from destroying a single-story Victorian structure and replacing it with a four-story, three-unit, 7,000-square-foot apartment building. The homeowner successfully sued to get the local planning board to consider its own guidelines in approving the building permit. The appellate court upheld the trial court's denial of the homeowner's request for attorney fees under section 1021.5, stating: "There was nothing 'abstract' and everything 'concrete' about the interests so tenaciously asserted by [the homeowner] in the court below. [¶] . . . Thus, [the] trial court [did] not abuse its discretion in concluding that [the homeowner's] interest in maintaining the aesthetic integrity of his immediate neighborhood and protecting both his property's privacy and its access to light, air and views, constitutes an 'individual stake' equally as significant as a purely pecuniary one." (*Williams, supra,* 74 Cal.App.4th at pp. 970-971; see also *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1103, 1106, 1113 [72 Cal.Rptr.2d 134] [one city successfully sued another city to block a street closure at the cities' border, but was unsuccessful in obtaining a § 1021.5 attorney fee award because the suit yielded a "substantial benefit" to the residents of the suing city]; see also *Christward Ministry*

*v. County of San Diego* (1993) 13 Cal.App.4th 31, 49-50 [16 Cal.Rptr.2d 435] [a religious retreat was partially successful in challenging on environmental grounds the expansion of a neighboring county landfill, which allegedly would have obstructed the retreat's key offering—its panoramic ocean view; the trial court denied the retreat's request for § 1021.5 attorney fees, stating the retreat's " 'private interests . . . with reference to the use of their property is the real basis for [the] action . . .' "; the appellate court said it could not quarrel with the reasonableness of this assessment].)

The basic legal standard for applying the financial burden criterion involves a realistic and practical comparison of the litigant's personal interest with the cost of suit. (*Foresters Assn., supra,* 30 Cal.App.4th at p. 570; *Hewlett, supra,* 54 Cal.App.4th at p. 544.) The issue, in short, is whether the cost of litigation is out of proportion to the litigant's stake in the litigation. (*Foresters Assn., supra,* 30 Cal.App.4th at p. 574.) " 'The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's [personal] interests to the extent necessary to encourage private litigation to enforce the right. [Citation.] To encourage such suits, attorney[] fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action.' " (*Id.* at p. 570, quoting *Beach Colony II v. California Coastal Com., supra,* 166 Cal.App.3d at p. 114.)

Admittedly, environmental or aesthetic interests are not easily quantified so as to compare them to the cost of litigation. Nevertheless, the factual example provided by *Williams* illustrates how this basic legal standard is specifically applied in comparing an aesthetic or environmental interest to the cost of litigation.

The homeowner in *Williams* sought to maintain "the aesthetic integrity of his immediate neighborhood." (*Williams, supra,* 74 Cal.App.4th at p. 971.) The evidence disclosed that the neighborhood was a "100 percent Victorian-structure block" with an "overall harmonious character." (*Ibid.*) The development proposal sought to demolish a single-story Victorian structure and replace it with a four-story, three-unit, 7,000-square-foot apartment building that was "completely out of architectural context." (*Id.* at pp. 963, 971.) The evidence also showed that the apartment building would result in a "lack of adequate parking." (*Id.* at p. 971.)

The homeowner in *Williams* sought to protect "his property's privacy." (*Williams, supra,* 74 Cal.App.4th at p. 971.) The evidence showed that the four-story, three-unit apartment building would effectuate a "substantial

'intrusion' " and "negative[ly] impact on [the homeowner's] and his neighbors' privacy." (*Ibid.*)

The homeowner in *Williams* sought to protect his property's "access to light, air and views." (*Williams, supra,* 74 Cal.App.4th at p. 971.) The evidence showed that instead of facing a single-story Victorian structure *next door*, the homeowner would be facing a four-story, three-unit, 7,000-square-foot apartment building. The evidence also showed that "significant blockages of light, views and air . . . would result from [the] construction" of the apartment building. (*Ibid.*) These assertions were supported by a large number of photographs of the existing views and available light. (*Ibid.*)

Finally, all of the interests asserted by the homeowner in *Williams* "related directly to a specific piece of real property owned by him: his family home." (*Williams, supra,* 74 Cal.App.4th at p. 970.)

This factual example from *Williams* shows that an aesthetic or environmental interest will not be considered sufficient to block an award of attorney fees under the financial burden criterion unless certain conditions are met. That interest must be specific, concrete and significant, *and* these attributes must be based on *objective* evidence. In short, for an aesthetic or environmental interest to block an award of attorney fees under the financial burden criterion, that interest must function essentially in the same way in the comparative analysis as a financial interest, clearly an objective interest. A subjective, vaguely grounded aesthetic interest, even if "heart-felt," will not be considered sufficient; nor will a mere abstract interest in aesthetic integrity or environmental preservation suffice to block an award of attorney fees. As the *Williams* court observed, the homeowner's " 'individual stake' " was "equally as significant as a purely pecuniary one" (*Williams, supra,* 74 Cal.App.4th at p. 971); this is surely true when one considers that the aesthetic interest in *Williams* encompassed a *next-door* neighbor's challenge to the destruction of a single-story Victorian and the construction of an architecturally incompatible four-story, three-unit, 7,000-square-foot apartment building (surrounded entirely by other Victorians), a building which would objectively destroy the homeowner's view along with his privacy, light, and air.

In clarifying the applicable legal standard, we must address one more point specifically. County and Cook essentially argue that a so-called "nimby" (not in my backyard) personal interest automatically disqualifies the party asserting it from meeting the financial burden criterion of section 1021.5, subdivision (b). This argument is mistaken in light of the legal

standard we have just adopted regarding an aesthetic or environmental interest. That legal standard calls for a specific and concrete aesthetic or environmental interest as demonstrated by *objective* evidence, the interest functioning essentially in the same way in the comparative analysis as a financial interest. The factual example of *Williams* illustrates how this standard is applied as a practical matter.

Furthermore, if County and Cook's "nimby" argument were valid, the private enforcement of environmental laws would be threatened. The fact is that "nimby" plaintiffs are often at the forefront of private environmental enforcement in the public interest. CEQA enforcement is built on such private enforcement. (*Rich v. City of Benicia* (1979) 98 Cal.App.3d 428, 437 [159 Cal.Rptr. 473].) The legal landscape is littered with so-called "nimby" plaintiffs who have been awarded attorney fees under section 1021.5 for enforcing environmental laws, or who have been given the opportunity to seek such an award. (See cases collected at 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 230, p. 771, including plaintiff names such as *Woodland Hills Residents Assn.*, *Save El Toro Assn.*, *Friends of 'B' Street*, and *Kern River Public Access Com.*)

The "nimby" characterization ignores the fact that before a party can be awarded attorney fees under the private attorney general theory of section 1021.5, that party must have *enforced* an *important public right*, must have *conferred* a *significant public benefit*, and must have done so in a context where private enforcement was *necessary*. (*Blythe, supra,* 32 Cal.App.4th at p. 1666.) Section 1021.5, by its design, forces "nimby" parties to look beyond their parochial interests to the greater public good. As we have noted, County and Cook on appeal do not dispute, and indeed cannot dispute, that plaintiffs have satisfied these public-spirited criteria.[2]

 Now we direct our attention to the trial court's ruling and the record.

In denying plaintiffs' request for attorney fees for the *Future I* appeal (aside from granting the City of Plymouth $1,650 in such fees), the trial court reasoned as follows: "Fee claimants attempt to meet the 'disproportion to personal stake' test [i.e., the financial burden criterion] by a statement in

---

[2]The comparison between aesthetic interest and cost of litigation, moreover, need not result in an "all or nothing" attorney fee award. (See *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1126-1128 [71 Cal.Rptr.2d 1] [the trial court did not abuse its discretion by awarding attorney fees under § 1021.5 and then reducing that award by 50 percent to reflect the financial interest of four of the six plaintiffs, where the plaintiffs also pursued a significant public interest].)

the declaration of attorney Barrow [one of their attorneys] that 'none of the [plaintiffs] has any financial incentive or economic interest in the outcome of the litigation.' It is not clear that disproportion of cost to the litigants' financial interest is the test. See City of Hawaiian Gardens v. City of Long Beach[, *supra*,] 61 Cal.App.4th 1100, 1113. In any event, the claim of lack of 'financial incentive or economic interest' is contradicted by the allegation in the petition that litigants 'are likely to suffer the physical taking of their private property . . . as a consequence of the Cinnabar project.' To the same effect are statements made by attorney Barrow at the administrative hearing, e.g., that the Cinnabar project 'will be taking my private property. It will be taking the private property of every one of my neighbors, everyone living on China Hill Road.' There is nothing in the fee claim that would support either an evaluation of the private interests at stake or a factual comparison which might support a determination that litigation costs were disproportionate to private interests. In that state of the record attorney fees on appeal should not be awarded to the private litigants."

In its ruling, the trial court noted *Hawaiian Gardens* but based its decision on the financial incentives and burdens related to bringing suit. The trial court concluded that plaintiffs had failed to meet their burden of proof on the financial burden criterion by failing to show that their financial burden in bringing suit was out of proportion to their financial interest in it. (See, e.g., *Beach Colony II v. California Coastal Com., supra,* 166 Cal.App.3d at p. 113 [party requesting § 1021.5 attorney fees has the burden to show that its litigation costs transcend its personal interest]; *Luck v. Southern Pacific Transportation Co., supra,* 218 Cal.App.3d at p. 30 [same].) We conclude the trial court abused its discretion in this assessment.

We first consider plaintiffs' financial interests in the *Future I* appeal. In the section 1021.5 motion for appeal fees, plaintiffs' lead counsel, Attorney Randy Barrow, declared that "[n]one of the [plaintiffs] have any financial incentive or economic stake in the outcome of the litigation." Eight members of The Future and the copresident of the Foothill Conservancy submitted supporting declarations reiterating this statement. According to the declaration submitted by the Foothill Conservancy's copresident, the conservancy is a nonprofit public interest corporation headquartered in Amador County; it has no financial interest or stake in the outcome of the litigation, owns no property in the vicinity of Cinnabar or elsewhere, and apparently has no member who owns property which will be affected by the Cinnabar project or who will be in any way financially affected by the project. County and Cook do not maintain that the Foothill Conservancy or the City of Plymouth has any personal financial stake or interest in this litigation that causes them to not satisfy the financial burden criterion of section 1021.5, subdivision (b).

Plaintiffs' complaint/petition for mandate supported these statements. The only relief plaintiffs sought was that County comply with constitutional and environmental laws in considering the Cinnabar project.

The trial court found plaintiffs' claims of no financial incentive or economic interest contradicted by the allegation in their complaint/petition that "[m]embers of The Future are likely to suffer the physical taking of their private real property . . . as a consequence of the Cinnabar project." The trial court found further contradiction in statements that Attorney Barrow had made in the administrative proceedings regarding Cinnabar, providing as an example the statement that the Cinnabar project "will be taking my private property. It will be taking the private property of every one of my neighbors, everyone living on China Hill Road."

In an *undisputed* declaration submitted in support of the section 1021.5 motion for appeal fees, however, Attorney Barrow declared that the statements regarding the taking of property referred to the eminent domain proceedings that may be necessary to widen China Hill Road (on which Barrow and some members of The Future live, and which provides a northern access point for the Cinnabar project). These statements regarding taking, declared Barrow, had nothing to do with financial well-being because any taking will result in compensation at fair market value. Moreover, declared Barrow, the Cinnabar taking contemplates only the condemnation of a few feet of property frontage on China Hill Road; this pales when compared to the nearly 600 hours of attorney time and $120,000 in attorney fees (lodestar amount) devoted to the appeal in this matter. Finally, Barrow declared that his property would actually increase in value if the Cinnabar project were constructed: "Market forces dictate that my home's proximity to an expensive, up-scale equestrian development can only increase its value, especially if [Cook's] glowing projections are even partially realized."

That takes care of plaintiffs' financial interests related to the *Future I* appeal. As for their financial burdens, we have noted the figures of nearly 600 attorney hours and $120,000 in attorney fees (lodestar amount). As the court that wrote the appellate opinion in *Future I*, we are intimately familiar with that appeal's complexity. Needless to say, that appeal was complex. It covered a multitude of issues and subjects concerning general plan consistency and CEQA compliance. It encompassed over 11,000 pages of administrative record. It took us 51 pages of slip opinion to wrestle the beast. All one has to do is read the "Disposition" section of *Future I* to get an idea of the complexity and length of that appeal. (*Future I, supra,* 62 Cal.App.4th at p. 1343.)

Thus, the record shows the trial court abused its discretion in concluding that plaintiffs failed to meet their burden of proof on the financial burden criterion, from a financial interests perspective. (See also *Blythe, supra,* 32 Cal.App.4th at pp. 1666-1667.) We remand for the trial court to consider whether the cost of the *Future I* appeal is out of proportion to plaintiffs' nonfinancial interests in the appeal. If the trial court finds that this cost is out of proportion to these interests, the court shall award attorney fees to plaintiffs for the *Future I* appeal.[3]

### 3. *Motion for Attorney Fees for Trial of Future I*

■ Plaintiffs also moved under section 1021.5 for the attorney fees they incurred in the *Future I* trial. The trial court denied this motion "on the basis that [plaintiffs] have not shown that the legal effort was disproportional to their personal economic stakes in the matter." Again, then, the trial court concluded that plaintiffs had not met their burden of proof on the financial burden criterion of section 1021.5, subdivision (b), focusing on plaintiffs' financial interests in the matter. Again, we find the trial court abused its discretion in this regard and we remand for the trial court to consider plaintiffs' nonfinancial interests in the equation.

In opposing the section 1021.5 motion for trial fees, County and Cook relied on the same financial evidence they cited in opposing the section 1021.5 motion for appeal fees (i.e., certain allegations in the complaint/petition and the administrative comments from Attorney Barrow, cited in the previous section of this opinion).

While County and Cook relied on the same financial evidence, plaintiffs supplemented their financial evidence with *undisputed* declarations. Those declarations, from attorney Barrow and from a state-certified residential appraiser, substantiated the fact that homes near Cinnabar would likely increase in value if Cinnabar were approved; this was also borne out by passages from the administrative record. Barrow's declaration also stated that only five members of The Future reside on China Hill Road, in three homes; and that Cinnabar contemplated a widening of China Hill Road to 24 feet, which would take only a few feet of street frontage of the China Hill residents. Barrow provided his parcel as an example of what the taking entailed. His parcel fronts on China Hill Road for 265 feet and extends back from the road approximately 1,500 feet (about 10 acres; and with a residence

---

[3]As noted, the trial court awarded the City of Plymouth $1,650 in attorney fees. This award covered 10 hours of attorney time for an attorney who helped plaintiffs' principal counsel on the *Future I* appeal. Plaintiffs do not appeal this award.

thereon is valued between $150,000 and $160,000). Assuming that five feet of Barrow's property is taken to widen China Hill Road, that would result in a taking of about one-third of 1 percent of his property. The other affected residents of China Hill Road may have slightly larger percentages of their properties at stake. Any property taken will be compensated at fair market value. The attorney trial time and requested trial fees (lodestar figure) encompassed about 1,200 hours and $240,000.

The analysis set forth regarding the section 1021.5 motion for appeal fees applies with even stronger force here, given this supplemental undisputed financial evidence. The trial court abused its discretion in concluding that plaintiffs had failed to show "that the[ir] legal effort [at trial] was disproportional to their personal economic stakes in the matter."

We remand for the trial court to consider whether the cost of the *Future I* trial is out of proportion to plaintiffs' nonfinancial interests in the trial. If the trial court finds that this cost is out of proportion to these interests, the court shall award attorney fees to plaintiffs for the *Future I* trial.

4. *Issues Surrounding Attorney Barrow's Status as Advocate and Beneficiary of Litigation*

For guidance on remand, we address two other issues raised by County and Cook.

■ First, County and Cook argue that Attorney Barrow should not profit from litigation in which he personally is the largest beneficiary. Whatever the merits of this argument are in the abstract, they are overwhelmed by the facts here.

True, Barrow is both an advocate and a beneficiary of this litigation. But The Future has at least 13 other members. And we cannot forget that plaintiffs also encompass the 200-member Foothill Conservancy and the City of Plymouth. In *Kern River Public Access Com. v. City of Bakersfield* (1985) 170 Cal.App.3d 1205 [217 Cal.Rptr. 125], substantial attorney fees were awarded under section 1021.5 to two attorneys who organized, represented and were members of a nonprofit public interest corporation which sued to obtain greater public access to a river. (*Kern River, supra,* 170 Cal.App.3d at pp. 1212-1213, 1225-1226.)

Contrary to what County and Cook say, Attorney Barrow's status in this litigation is not like the status of the attorney who sought section 1021.5 fees in *Bruno v. Bell* (1979) 91 Cal.App.3d 776 [154 Cal.Rptr. 435]. In *Bruno,* the

only plaintiff was an attorney pursuing a legal technicality of de minimis societal importance. (*Id.* at p. 786.) Section 1021.5's requirements that an important public right be enforced and a significant public benefit be conferred act as legal safeguards in this respect. Furthermore, here there were many factual safeguards. There was a large number of member plaintiffs. There is no contention that Attorney Barrow "set up" County or Cook. (See *Kern River Public Access Com. v. City of Bakersfield, supra,* 170 Cal.App.3d at p. 1226.) Barrow was not self-dealing here. Undisputed evidence shows, if anything, that he was self-sacrificing. Barrow did not want to take on the case (and for those with any experience with CEQA litigation, who can blame him). He did so reluctantly only after being prodded by his neighbors and only after other counsel unexpectedly could not take up the mantle. Barrow is a business litigator who generally does not work on a contingency basis. He and Attorney Thomas Infusino have spent 1,800 hours on the trial and appeal of this matter (and the clock is still running).

Second, County and Cook note that plaintiffs were not actually responsible for the attorney fees incurred here. Attorney Barrow and his cocounsel, environmental attorney Thomas Infusino, agreed to provide representation without charge, with the understanding that they would be compensated if the court were to award attorney fees to plaintiffs. This is precisely the fee arrangement in *Woodland Hills, supra,* 23 Cal.3d at pp. 927-928. This arrangement does not foreclose a section 1021.5 award; the reason why was explained in *Serrano v. Priest, supra,* 20 Cal.3d at page 48: "Because the basic rationale underlying the 'private attorney general' theory [is] to encourage the presentation of meritorious . . . claims affecting large numbers of people, . . . a denial of the benefits of the rule to such attorneys would be essentially inconsistent with the rule itself." (See *Woodland Hills, supra,* 23 Cal.3d at pp. 941-942.) In any event, The Future was responsible for costs, a quite substantial risk given the complexity of this case.

### DISPOSITION

The portion of the appeal order awarding $1,650 in attorney fees to the City of Plymouth is affirmed. The provisions of the two orders denying plaintiffs' section 1021.5 motions for attorney fees for the trial and the appeal of *Future I* are reversed. We remand this matter to the trial court for it to consider whether the cost of this litigation is out of proportion to plaintiffs' nonfinancial interests in the litigation. If the trial court concludes that this cost is out of proportion to these interests, the court shall determine and award the amount of these trial and appeal attorney fees, as well as the

amount of attorney fees incurred in the present proceedings, including the section 1021.5 motion proceedings and the present appeal. (*Los Angeles Police Protective League v. City of Los Angeles, supra,* 188 Cal.App.3d. at p. 17 [a successful appellant is entitled to a § 1021.5 award of attorney fees for both the trial and appeal of the attorney fee issue itself].) Plaintiffs are awarded their costs for the present appeal.

Nicholson, J., concurred. ·

**SIMS, Acting P. J.,** Concurring and Dissenting.—I concur with the majority opinion to the extent it concludes the trial court abused its discretion in refusing to award fees, so that the matter should be remanded to the trial court. However, I respectfully dissent from the majority's conclusion that the aesthetic interest of plaintiffs may serve to defeat an award of fees under Code of Civil Procedure section 1021.5.[1]

In my view, the aesthetic interest of plaintiffs should not preclude an award of fees for a variety of reasons, as follows:

*First*, the majority's conclusion (that an aesthetic interest may suffice to defeat an award of fees) is at odds with the holding of the California Supreme Court in *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704]. In *Press*, private citizens obtained an injunction prohibiting Lucky Stores from disallowing their efforts to gather signatures on an initiative petition in front of a shopping center. The trial court awarded the plaintiffs some $113 in attorneys fees under the private attorney general theory. Reversing that meager award, and remanding for a determination of fees, the Supreme Court said in pertinent part, "Plaintiffs' action also fulfills section 1021.5's mandate that 'the necessity and financial burden of private enforcement [be] such as to make the award appropriate.' *This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit. Since plaintiffs had no pecuniary interest in the outcome of the litigation,* 'the financial burden in this case [was] such that an attorney fee award [was] appropriate in order to assure the effectuation of an important public policy.' (*Woodland Hills* [*Residents Assn., Inc. v. City Council* (1979)] 23 Cal.3d [917,] 942 [154 Cal.Rptr. 503, 593 P.2d 200].)" (*Press v. Lucky Stores, Inc., supra,* 34 Cal.3d at p. 321, fn. omitted, italics added.)

The aforementioned text from *Press* was accompanied by footnote 11 which provides in full as follows: "That plaintiffs' personal interests in the outcome of the oil profits initiative were sufficient to induce them to bring

---

[1]This statute is referred to hereafter simply as "section 1021.5."

this action is irrelevant. As the statute makes clear, *subdivision (b) of section 1021.5 focuses not on plaintiffs' abstract personal stake, but on the financial incentives and burdens related to bringing suit.* Indeed, in the absence of some concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 93, pp. 1768-1770.)" (*Press v. Lucky Stores, Inc., supra,* 34 Cal.3d at p. 321, fn. 11, italics added.)

These passages leave no doubt that, where private citizens are bringing suit, the relevant criteria focus on the financial *incentives* and burdens related to bringing suit. Indeed, *Press* has been interpreted by the leading treatise on attorneys fees in California as reaching precisely this result:

"An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest; that is, when the need to pursue the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' *Woodland Hills Residents Ass'n v. City Council* (Woodland Hills II)[, *supra,*] 23 C3d 917, 941 . . . (quoting *County of Inyo v. City of Los Angeles* (1978) 78 CA3d 82, 89, 144 CR 71).

"When the successful party has no pecuniary interest in the outcome of the litigation, this requirement is fulfilled. *Press v. Lucky Stores, Inc., supra. Press* was followed in *Slayton v. Pomona Unified Sch. Dist.* (1984) 161 CA3d 538, 552, 207 CR 705, 714, and *Phipps v. Saddleback Valley Unified Sch. Dist.* (1988) 204 CA3d 1110, 251 CR 720.

"If the party claiming fees has a pecuniary interest in the outcome of the lawsuit, the issue is whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit. In *Baggett v. Gates* (1982) 32 C3d 128, 185 CR 232, a suit by two police officers challenging reassignment to a lower-paying position without a proper hearing under the Public Safety Officers' Procedural Bill of Rights Act (Govt C §§ 300-3311), the court noted that, although the lawsuit enforced basic procedural rights, it might not have resulted in any pecuniary benefit to the plaintiffs; therefore, it held, the financial burden requirement was met. 32 C3d at 143. . . .

"The court in *Henneberque v. City of Culver City* (1985) 172 CA3d 837, 218 CR 704, followed *Baggett,* noting that 'the financial burden of prosecuting this case through two writ proceedings and two appeals clearly is "out of proportion" to the economic benefit Henneberque now stands to gain.' 172 CA3d at 847, 218 CR at 710. See also *People ex rel Seal Beach Police Officers Ass'n v. City of Seal Beach* (1984) 36 C3d 591, 602, 205 CR 974,

801. See also *Schmid* v. *Lovette* (1984) 154 CA3d 466, 479, 201 CR 424, 431 (simplicity of litigation does not eliminate burden).

"The private attorney general doctrine, however, was not intended to reward litigants motivated by their own pecuniary interests who only coincidentally protect the public interest. *Flannery* v. *CHP* (1998) 61 CA4th 629, 71 CR2d 632; *Weeks* v. *Baker & McKenzie* (1998) 63 CA4th 1128, 1170, 74 CR2d 510 (following *Flannery*); *Beach Colony II, Ltd.* v. *California Coastal Comm'n* (1985) 166 CA3d 106, 114, 212 CR 485. Compare *Beach Colony* with *Planned Parenthood, Inc.* v. *Aakhus* (1993) 14 CA4th 162, 173, 17 CR2d 510, 516 (fees awardable even though plaintiff had sufficient business interest to bring suit because suit also brought to protect 'mutual and inseparable' interests of its patrons); *Galante Vineyards* v. *Monterey Peninsula Water Mgmt. Dist.* (1997) 60 CA4th 1109, 71 CR2d 1 (upholding fee award in CEQA action because, although four of six petitioners had financial interest, obtaining environmental impact report produced 'no direct pecuniary benefit' and any 'future monetary advantage . . . is speculative')." (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 1999) § 4.34, pp. 4-32 to 4-33.)

In *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1667-1668 [39 Cal.Rptr.2d 189], this court followed *Press* and held that, in order to defeat an award of fees, a plaintiff's personal stake in the litigation had to be financial.

In *Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961 [88 Cal.Rptr.2d 565] (*Williams*), the only California case recognizing that a successful plaintiff's attorneys fees may be defeated by his aesthetic interest in the litigation, the court purported to distinguish *Press* on several grounds, none of which is persuasive.

First, the *Williams* court asserted that, ". . . this issue was not in any way central to the holding of *Press*." (*Williams, supra,* 74 Cal.App.4th at p. 970.) This is simply wrong. The *Press* court was explaining why the plaintiffs were entitled to an award of attorneys fees. An integral part of that explanation was that the action fulfilled section 1021.5's mandate that the necessity and financial burden of private enforcement be such as to make the award appropriate. The court was explaining why that criterion of the statute was satisfied. The determination was essential to the *Press* court's analysis, and *Williams* errs in concluding to the contrary.

Next, *Williams* argues that, "[I]t would appear from the opinion [in *Press*] that the point (i.e., the satisfaction by appellant of the third statutory factor)

was not even contested by the respondent there." (*Williams, supra,* 74 Cal.App.4th at p. 970.) This allegation finds no support in the *Press* opinion. Moreover, it is contradicted by the context of footnote 11, which reaches out to determine whether the plaintiffs' personal interests in the outcome of the initiative were sufficient to induce them to bring this action. Footnote 11 appears to constitute a refutation of a point urged by the respondent in *Press.* The suggestion in *Williams* that the point was not litigated is without support and erroneous.

Next, the *Williams* court argues that, ". . . Although the [*Press*] court does indeed use the terms 'pecuniary interest' and 'financial incentives' in the brief paragraph and footnote it devotes to the issue, it does not hold that such are the *only* type of personal interests that would disqualify a litigant from a fee award." (*Williams, supra,* 74 Cal.App.4th at p. 970.) This conclusion by *Williams* simply emasculates what the Supreme Court said in *Press.* The Supreme Court could have avoided the use of "pecuniary interest" and "financial incentives" if it wanted to. It did not. The *Williams* court improperly reads the *Press* court's plain references to "pecuniary interest" and "financial incentives" out of the opinion. In short, *Williams* is incorrectly decided on this point and we should not follow it.

This leaves the question of what to make of Court of Appeal decisions (other than *Williams*) that have assertedly recognized that a nonpecuniary interest may defeat a claim for fees under section 1021.5.

Two of these cases—*County of Inyo v. City of Los Angeles, supra,* 78 Cal.App.3d 82 and *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100 [72 Cal.Rptr.2d 134]—are logically taken together because they are both cases in which the plaintiff seeking fees was a public entity. In neither case did the court recognize that abstract aesthetic interests could suffice to defeat an award of fees. Thus, in *County of Inyo,* at issue was an environmental impact report that dealt essentially with the appropriation of the county's groundwater to the City of Los Angeles. Similarly, in *Hawaiian Gardens,* at issue was the closure of a road with a gate that would have denied access to the city's residents. These interests are not abstract aesthetic interests but are rather concrete interests affecting two of the most essential duties of government: water and transportation. Moreover, it cannot be overlooked that, implicit in these cases, is the reluctance of the courts to award fees by one public entity against another where the vindication of the public interest is at issue. These cases are not useful in adjudicating the current dispute because (a) they do not involve the assertion of an aesthetic interest and (b) they are cases in which a public entity is the plaintiff seeking fees.

This leaves *Christward Ministry v. County of San Diego* (1993) 13 Cal.App.4th 31 [16 Cal.Rptr.2d 435]. There, Christward Ministry, a non-profit corporation owning 640 acres of land, challenged the adequacy of an environmental impact report prepared by the County of San Diego in connection with a planned vertical and horizontal expansion of the county's landfill. The expansion of the landfill would have seriously interfered with the ministry's view from its property. In holding that Christward was not entitled to fees under section 1021.5 the Court of Appeal referred to Christward's interest as a "property interest" and did not discuss whether an abstract aesthetic interest was at issue in the denial of fees. This case simply does not address the issue with which we are dealing in the present case. " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476], quoting *People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].) Moreover, although the issue was not tendered, it is apparent that the expansion of the landfill to block Christward's view from its own property would necessarily have a negative impact on Christward's property value and therefore, if the issue were tendered, the case could be treated as one involving Christward's economic interest in seeing the landfill stopped.

In sum, except for *Williams, supra,* 74 Cal.App.4th 961, which, in my view, is incorrectly decided, no California authority supports the view that nonpecuniary aesthetic interests are sufficient to block an award of attorneys fees otherwise appropriate under section 1021.5.

A *second* reason for disagreeing with the majority's conclusion is that abstract aesthetic interests, which are unrelated to an effect on property values, are incapable of reasonably accurate valuation. It should be empha-sized that this is not a case (like *Christward Ministry*) where aesthetic interests have a direct impact on property values and are thereby capable of being translated into pecuniary terms by expert real estate appraisers. Rather, this is a case where, as the majority points out, there is no direct pecuniary benefit to plaintiffs' properties from the aesthetic interests that they assert in connection with the general plan at issue.

There is simply no way reasonably to place a pecuniary valuation on the sorts of abstract aesthetic interests that are at issue in this litigation. There is no available thermometer by which to take plaintiffs' aesthetic temperature. To state, as does the majority, that evidence of an aesthetic interest must be "objective" does not add anything; "objective" evidence of an inherently abstract concept does not serve to transform that concept into concrete terms.

This necessary vagueness will have two unfortunate consequences. First, the trial court in this case will be tempted to reason that, since plaintiffs have brought this litigation and have incurred attorneys fees, their aesthetic interests were sufficient to justify bringing the litigation. But that reasoning is faulty. As I have discussed above, until the very recent *Williams* case, decided long after plaintiffs obtained judgment in this case, there was no California authority holding that aesthetic interests could defeat an award of fees under section 1021.5. Thus, in this case, plaintiffs undoubtedly undertook this litigation with the reasonable expectation that, should they prevail, fees would be awarded to them. It would be unfair to hold them to a different assumption ex post facto.

A second troublesome consequence of the difficulty of evaluating abstract aesthetic interests is that it provides trial judges with no concrete or reviewable standard for evaluating fees. There will be a temptation to deny fees in cases where there is an aversion to public interest litigation in general or to environmental litigation in particular. This is not a salutary result.

A *third* reason why I disagree with the majority on this point is that recognition of aesthetic values as a criterion for denying an award of fees will have a chilling effect on the enforcement of laws designed to preserve California's aesthetic quality. Most notably, recognition of purely aesthetic interests will profoundly discourage future plaintiffs from bringing suit for violations of California Environmental Quality Act. Perhaps it is well to state the obvious: fees under section 1021.5 are awarded only where the plaintiffs have made out a violation of law by a public entity. It is bad policy to discourage citizens from enforcing laws designed to protect California's precious and irreplaceable aesthetic environment.

*Fourth* and finally, a rule allowing abstract aesthetic interests to defeat an award of fees opens the door to recognition of other abstract personal interests that could defeat an award of fees under section 1021.5. Everybody brings a lawsuit for a reason. If a plaintiff's aesthetic interests are sufficient to defeat an award of fees, what about a plaintiff's interest in good government or in the proper enforcement of the laws? At oral argument, real party in interest acknowledged that a plaintiff's interest in good government could be sufficient to block an award of fees. The possibilities are endless. It is not hyperbole to say that, if abstract nonpecuniary interests are allowed to defeat awards of fees to private citizens, then the very evisceration of section 1021.5 is at hand.

For these reasons, then, I respectfully dissent from the majority's conclusion that plaintiffs' aesthetic interests, which are not grounded in any pecuniary gain, are sufficient to defeat an award of fees on remand.