[No. A107461. First Dist., Div. Two. Feb. 6, 2006.]

DANIEL LYONS, Plaintiff and Appellant, v.
CHINESE HOSPITAL ASSOCIATION et al., Defendants and Respondents.

1332

## COUNSEL

Sideman & Bancroft, Richard Joseph Nelson and Jeffrey Charles Hallam for Plaintiff and Appellant.

Davis Wright Tremaine and Sameh Nader Dawood for Defendants and Respondents.

## OPINION

**KLINE, P. J.—**

### Introduction

Plaintiff Daniel Lyons (Lyons) appeals from a postjudgment order of the San Francisco Superior Court denying his motion for attorney fees pursuant to Code of Civil Procedure section 1021.5[1] following entry of a stipulated judgment and permanent injunction in Lyons's lawsuit against defendant Chinese Hospital Association (CHA). By this judgment, CHA was "permanently enjoined" from violating specific asbestos laws concerning notification, training and surveying at CHA-owned buildings, including the Chinese Hospital, a medical office building and six other specified buildings. The injunction also required CHA to retain and pay North Tower Environmental, a certified asbestos consulting firm, to monitor CHA's compliance with the asbestos laws, reporting annually to the court regarding CHA's compliance for a period of three years.

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise indicated.

The trial court denied the fee request on the grounds that Lyons was not a successful party under the statute; that Lyons failed to demonstrate that a fee award was appropriate because of the necessity and financial burden of private enforcement; that the district attorney instituted a parallel prosecution of defendant, also obtaining a stipulated injunction; and that Lyons failed to establish that the "interests of justice" required defendant to pay his fees.

Lyons contends that the trial court abused its discretion in refusing to award him fees and costs. We shall conclude the trial court abused its discretion in denying attorney fees to Lyons.[2]

## Facts[3] and Procedural Background

### A. Underlying Action

In late 1998, CHA and Daniel Lyons doing business as Daniel Lyons Builders entered a contract under which the latter agreed to remodel certain portions of the first floor of the Chinese Hospital building. The remodeling required some demolition work, including removal of floor tile. At a prebid meeting on December 14, 1998, and again at a preconstruction meeting on February 24, 1999, a question was asked about the presence of asbestos-containing material in the construction area. CHA chief engineer Sam English and a representative of the project architect, Gordon H. Chong and Partners, informed Lyons that an asbestos survey of the hospital had been performed and that the construction area was free of asbestos-containing material. After seven months of demolition and construction, Lyons saw material that he suspected contained asbestos and asked English to show him the asbestos survey. When English did not produce the survey, Lyons took samples of the materials and had them tested himself. The results showed that asbestos was present through-out the construction site, in the vinyl floor tile, floor mastic, insulation wrap on heating, ventilation, and air conditioning boxes, and the core of doors. Appellant Daniel Lyons and his brother Morgan (plaintiffs) had personally removed floor tile manually by chipping and prying it with large demolition

---

[2] In a letter filed less than one week before oral argument, defendant CHA advised this court of its intent to rely at oral argument upon three cases relating to the issue of the retroactive application of Proposition 64. Proposition 64 was passed by the electorate on November 2, 2004, and became effective the following day. It amended certain provisions of the unfair competition law and the false advertising law. At no time during the past year has defendant raised in this appeal any issue relating to the retroactive impact of Proposition 64. Clearly defendant has waived the right to raise the issue in this appeal. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2004) ¶ 9:21, p. 9-6.)

[3] Many of the facts are taken from the "Final Arbitration Award" issued in the arbitration between the parties on Lyons's damage claims.

bars and scraper blades. The arbitrator found that demolition of the floor tile exposed the pair to airborne asbestos. Lyons produced evidence that the release of asbestos occurred directly adjacent to the hospital lobby, in which CHA employees worked and members of the general public congregated, and through which patients, employees and members of the public walked on a daily basis. However there was no finding that employees, patients or the public were actually exposed to asbestos. Upon receiving the test results, Lyons immediately shut down the construction, refusing to return until CHA conducted a thorough and complete asbestos survey of the construction area. Lyons also demanded that CHA notify state authorities about the disturbance of asbestos in the hospital, citing to various regulations CHA had violated in misleading him about having a survey.

It is undisputed that Lyons spoke with "two or three . . . asbestos lawyers" to try to find a lawyer to pursue the hospital. They each refused to take the case because plaintiffs would not know for at least 20 years whether they would become sick as a result of the asbestos exposure. The lawyers told Lyons "the case was just too complex to bring, particularly with uncertain damages." In late spring of 2000, Attorney Richard Nelson, who had recently left the United States Attorney's Office, agreed to represent Lyons. Nelson knew that the costs of litigation would be high, and that there was only a "slight chance of a significant monetary recovery" by Lyons. Nelson convinced his law firm to take the case on a contingency fee, with the main focus of the representation being an effort to encourage the government to prosecute CHA. Nelson enlisted Jeff Hallam as cocounsel.

During the spring and summer of 2000, counsel and Lyons contacted federal and state authorities. The case was initially presented to federal prosecutors and the Environmental Protection Agency (EPA). The EPA ultimately referred Lyons to the San Francisco District Attorney's Office. In August 2000, counsel and Lyons met with Assistant District Attorney Ross Mirkarimi. However, when Mirkarimi did not respond to followup messages and in light of the statute of limitations on some of the personal injury causes of action, plaintiffs filed the civil action herein against CHA, English and others (collectively defendants) on November 1, 2000.[4]

---

[4] In August 2000, Daniel Lyons Builders sued Chinese Hospital to foreclose on work performed at the hospital. (*Daniel Lyons, dba Daniel Lyons Builders v. Chinese Hospital* (Super. Ct. S.F. City and County, 2000, No. 313206). In October 2000, the case was ordered into arbitration, pursuant to the agreement of the parties, and ultimately settled.

The complaint contained five causes of action seeking tort damages for exposure to asbestos,[5] one cause of action seeking declaratory relief for indemnity against future liability the plaintiffs might incur related to demolition and removal of asbestos-containing material from the hospital, and one cause of action for unfair business practices (Bus. & Prof. Code, § 17200) seeking injunctive relief to require CHA to comply with specified asbestos laws and regulations and for attorney fees pursuant to section 1021.5.

During discovery, it was disclosed that CHA was not in compliance with many asbestos regulations, including requirements regarding notice to employees and employee asbestos awareness training. On March 29, 2001, the hospital's director of human resources provided a declaration that no asbestos notice had ever been given to its employees, despite the October 2000 receipt by hospital department heads of an e-mail from English concerning the presence of asbestos-containing materials in the hospital. Nor had the hospital provided any asbestos awareness training materials to its employees.

On April 9, 2001, Lyons filed a motion for a preliminary injunction before the Honorable A. James Robertson II, to require CHA to provide the required notice and training. On April 12, 2001, CHA filed opposition, arguing Lyons lacked standing, that he had unclean hands and that the motion was moot because CHA was scheduling asbestos awareness training for hospital engineers and housekeepers to be completed within 60 days and because it planned to send within the week a written notice to each employee informing the employee of the presence of asbestos-containing materials in the hospital and medical office building.[6]

---

[5] These tort causes of action were titled: "fraud and deceit," "negligent misrepresentation of fact," "contract induced by falsity and fraud in violation of Business and Professions Code section 7160," "intentional infliction of emotional distress," and "negligence."

[6] In her declaration, filed with CHA's opposition to the preliminary injunction, CHA interim chief executive officer Brenda Yee stated that in November 2000, CHA had hired North Tower Environmental, Inc., to conduct an asbestos survey of the Jackson Street medical office building and to provide asbestos awareness training for hospital engineers and housekeepers and to implement an operations and maintenance program to provide procedures designed to minimize the likelihood of unintentional disturbance of asbestos-containing materials. She declared that CHA had waited until that survey was complete to schedule the trainings so that the program could address asbestos-containing materials in both the Chinese Hospital and the medical office building.

Lyons points out that such compliance occurred *11* years after CHA learned that asbestos was present in the basement of the medical office building, *18 months* after CHA's consultants confirmed the existence of asbestos on the first floor of the hospital, *seven months* after CHA's own consultant told it in writing how to comply with the asbestos laws, and *five months* after CHA's consultant provided it with employee notification letters ready for distribution.

On April 23, 2001, the day before the hearing on the preliminary injunction, Judge Robertson issued a tentative ruling, continuing the hearing to May 15, 2001, to permit CHA to comply with its asbestos notification and training obligations and stating that the court would issue an order granting the motion if CHA did not provide the required notification and training by May 15. Thereafter, CHA filed declarations stating that employees and tenants of the hospital and medical office building were notified about the presence of asbestos in those buildings on April 17 and 19, 2001, and that asbestos awareness training had been provided to custodial and engineering staff on May 1–3, 2001. Based upon these declarations, the court denied the preliminary injunction motion as moot.

However, CHA had distributed the written notices to its employees only in English. Depositions of Chow Ming Cheung and Kwok Sun Wong, two CHA housekeepers who cleaned asbestos-containing materials such as floor tiles as part of their duties, disclosed that neither read English. Both required a Cantonese interpreter for their depositions. Cheung testified that he did not recognize the notice and Wong testified that he received only an English version that required translation by his son. On August 23, 2001, Lyons again moved for a temporary restraining order and an order to show cause as to why a preliminary injunction should not issue requiring CHA to provide the asbestos notice in a language readily understandable to all CHA employees, as required by law. CHA opposed the motion, arguing that the law did not require notice to foreign-speaking employees in their native languages and that it had provided its hospital supervisors with Cantonese translations of the notice to distribute to those employees they believed did not speak English well enough to understand. After Judge Robertson issued an order to show cause and set the preliminary injunction for hearing on September 10, 2001, CHA delivered a copy of the asbestos notice translated into Cantonese to all of its employees. Judge Robertson denied the motion for preliminary injunction without prejudice to bring it again should plaintiffs find other employees requiring foreign language notice in a language other than English or Cantonese.

## B. *District Attorney Becomes Involved*

In September 2001, after CHA served a subpoena on the district attorney in connection with plaintiffs' action, Lyons's counsel contacted June Cravett, the head of the environmental crime section of the district attorney's office. Cravett informed him that Mirkarimi had taken a leave of absence in the summer of 2000, and that she knew nothing about the case. However, when she expressed interest in learning more, counsel sent her copies of depositions and some of the critical documents produced in discovery. Assistant District Attorney James Thompson was then assigned to gather more information to

determine whether prosecution was warranted. Nelson met with Thompson more than a dozen times and supplied copies of depositions and videotapes of depositions. Thompson spent days at Nelson's office reviewing boxes of documents that had been produced during discovery and making copies of documents that he wanted. In 2002, the district attorney's office notified CHA and Sam English that it would be pursuing charges against them. Ultimately, CHA and Thompson agreed to a stipulated judgment and permanent injunction. The judgment and injunction was entered in May 2003. (*People v. Chinese Hospital Association, Sam English* (Super. Ct. S.F. City and County, 2002, No. 419508.) The injunction involved two main issues: notification to contractors about asbestos in the hospital and disposal of asbestos in approved hazardous waste facilities. Defendants did not admit liability, and the stipulated injunction provided it was not to be used as evidence or admission of liability. The main provisions of that injunction permanently enjoined CHA, English and their representatives and successors "from violating any provision . . . of California Code of Regulations, Title 8, section 1529," and imposed a $10,000 civil penalty (Health & Saf. Code, § 25189) upon English for violations involving false statements and illegal disposal of hazardous waste.

## C. *Arbitration of Tort Claims*

On September 20, 2001, the superior court granted CHA's renewed petition to compel arbitration in the case filed by Daniel and Morgan Lyons, submitting all causes of action except for the alleged violation of Business and Professions Code section 17200 to arbitration. The arbitration was conducted in May and June 2003.

On July 28, 2003, in a written final arbitration award, the arbitrator found that defendants CHA and English had negligently misrepresented that asbestos-containing material was not present at the hospital and that an asbestos survey had been performed. The arbitrator also found that the statements had been made with intent to induce reliance and that plaintiffs had justifiably relied upon them. However, the arbitrator also found the misrepresentations had been negligent only and not intentional. The evidence did not prove that CHA or English had actual knowledge that the hospital building contained asbestos materials and consequently, that "the representations about the absence of asbestos in the construction area did not constitute fraud or any type of intentional tort, including the intentional infliction of emotional distress." Although the arbitrator had found negligent misrepresentation and reliance, he also found that plaintiffs had failed to prove they suffered damage as a result of the misrepresentation. Plaintiffs were unable to present evidence quantifying their increased risk of contracting mesothelioma and so had "failed to establish that [they] faced a significant risk or any

quantifiable risk at all of contracting an asbestos related disease as a result of their exposure to asbestos at the hospital building."

The arbitrator therefore determined that plaintiffs should recover nothing from defendants and awarded neither plaintiffs nor defendants "indemnity against either of the others." The arbitration award provided that both plaintiffs and defendants bear their own costs and attorney fees and that both should bear equally the cost of the arbitrator's fees.

D. *Stipulated Judgment and Injunctive Relief*

Upon conclusion of the arbitration, plaintiff Morgan Lyons dismissed his remaining unfair competition cause of action against defendants. Plaintiff and appellant Daniel Lyons moved to set his remaining claim for unfair competition and injunctive relief for trial. Over defendants' opposition, the superior court (Hon. Donna Hitchens) set Lyons's injunctive relief claim for trial on February 2, 2004.

On January 6, 2004, Lyons deposed Karen Chow, an officer of CHA. Chow admitted that CHA had surveys of asbestos in other CHA-owned buildings and had reviewed the report in January 2002; CHA had not provided the required written asbestos notice to custodians, tenants and residents of any of those other CHA-owned buildings that had been found to contain asbestos; and no training had been provided to persons performing housekeeping services at those other CHA-owned buildings.

Shortly thereafter, the parties agreed to entry of a "Stipulated Judgment and Permanent Injunction" that was approved by Judge Hitchens on January 29, 2004, and entered on February 6, 2004. Neither party was named the prevailing party therein and defendants did not admit fault. The permanent injunction provided in relevant part:

"4. CHA shall be permanently enjoined from violating California Health & Safety Code § 25914 et seq.; 8 CCR §§ 1509, 3203, 5203, 5208; Bay Area Air Quality Management District Regulation 11, and 42 U.S.C. § 7401 et seq., at CHA-owned buildings, including the Chinese Hospital, located at 845 Jackson Street, a Medical Office Building, located at 835 Jackson Street, and buildings located at 734 Bush Street, 716–722 Jackson Street, 20 Wentworth Street, 506–510 Grant Street, 842–848 Washington Street, and 603–609 Jackson Street in San Francisco, California.

"5. CHA shall retain and pay North Tower Environmental to monitor CHA's compliance with the asbestos laws and report to the Court regarding CHA's compliance. The first such report shall be made within two months of

the entry of this Stipulated Judgment by the Court, and then annually for three years thereafter, with the Court retaining jurisdiction for the purpose of ensuring compliance with this Stipulated Judgment."

The stipulated judgment also provided that plaintiff's attorney fee request was to be resolved by the superior court law and motion department.

Pursuant to the terms of the permanent injunction, North Tower Environmental filed its first compliance report with the court on April 5, 2004. It detailed the actions taken by CHA to comply with asbestos laws, including notification of employees, tenants and contractors bidding on and performing work at the CHA-owned buildings, training of custodial, housekeeping, and engineering staff performing work at CHA-owned buildings; identification of asbestos through asbestos inspections; reviewing, monitoring, updating and streamlining CHA's in-place asbestos program and records related thereto.

E. *Attorney Fee Proceedings*

On May 5, 2004, Lyons moved for an award of attorney fees of approximately $1 million under section 1021.5. Following a hearing, the trial court issued a minute order denying the motion on June 7, 2004, but failing to state reasons for doing so. Lyons sought clarification of the order and, on August 6, 2004, the court filed its order clarifying its denial of Lyons's motion. In its entirety, the order states:

"Plaintiff's motion for an award of attorney's fees is denied for the following reasons:

"Plaintiff is not a successful party within the meaning of Code of Civil Procedure § 1021.5. Contrary to plaintiff's assertions, this case was not primarily directed at achieving a public benefit by forcing defendant Chinese Hospital Association to comply with laws regulating asbestos. The lawsuit was primarily about recovering damages, and in that regard it was unsuccessful. Plaintiff filed his lawsuit because he wanted damages for exposure to asbestos during work performed on defendant's property. He failed in the six causes of action directed at that goal.

"On his claim for violation of Business and Professions Code § 17200, plaintiff was successful to the extent that defendant Chinese Hospital Association stipulated to an injunction requiring it to refrain from certain activities and comply with the law. This limited success, is outweighed by the lack of success on other scores.

"Plaintiff has failed to demonstrate that a fee award is appropriate because of the necessity and financial burden of private enforcement. The test is whether the achievement of the public benefit outweighs plaintiff's personal stake in the outcome. Here it does not. The fees and costs incurred in this case were primarily directed at the recovery of damages on the claims that were arbitrated. Plaintiff's personal stake in the outcome of that aspect of the case was quite substantial and included a demand for punitive damages. In addition, the necessity of private enforcement is questionable because the record shows that the district attorney of San Francisco instituted a parallel prosecution of the defendant for violation of asbestos laws and achieved the same result, a stipulated injunction.

"Finally, Plaintiff has not established that the interests of justice require that defendant pay his fees."

This timely appeal followed.

## Discussion

### A. *Issues and Scope of Review*

■ "Attorney fees are recoverable under section 1021.5 (1) by a successful party, (2) in an action that has resulted in the enforcement of an important right affecting the public interest, (3) if a significant benefit has been conferred on the general public or a large class of persons, and (4) the necessity and financial burden of private enforcement are such as to make the award appropriate. The statute's purpose is to encourage public interest litigation that might otherwise be too costly to pursue. (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 511 [94 Cal.Rptr.2d 205].)" (*Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 176–177 [31 Cal.Rptr.3d 447] (*Bowman*).)[7]

---

[7] Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code."

" 'The trial court is to assess the litigation realistically and determine from a practical perspective whether [the statutory] criteria have been met.' (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors, supra,* 79 Cal.App.4th at p. 511.) Rulings under section 1021.5 are reviewed for abuse of discretion. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578 [21 Cal.Rptr.3d 331, 101 P.3d 140].) The questions are whether the court applied the proper legal standards under section 1021.5 and, if so, whether the result was within the range of the court's discretion (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298 [255 Cal.Rptr. 704]), i.e., whether there was a reasonable basis for the decision (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365])." (*Bowman, supra,* 131 Cal.App.4th at pp. 176–177.)

"Although [section] 1021.5 is phrased in permissive terms (the court 'may' award), the discretion to deny fees to a party that meets its terms is quite limited. The [S]upreme [C]ourt in *Serrano v. Unruh* (*Serrano IV*) (1982) 32 [Cal. 3d] 621, 633 [186 Cal.Rptr. 754] . . . , noted that the private attorney general theory, from which [section] 1021.5 derives, requires a full fee award 'unless special circumstances would render such an award unjust.' " (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 2005) § 4.42, p. 132; accord, *Hammond v. Agran* (2002) 99 Cal.App.4th 115, 129 [120 Cal.Rptr.2d 646].)[8]

In *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19 [97 Cal.Rptr.2d 797] (*Lealao*), we agreed with *City of Sacramento v. Drew, supra,* 207 Cal.App.3d 1287, that the " 'scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an

---

[8] "The statutory criteria of section 1021.5 are qualified by the permissive 'may,' suggesting that the statute delegates authority to deny attorney fees in special circumstances notwithstanding that the criteria are found to apply. (See generally, *Serrano v. Unruh*[, *supra*,] 32 Cal.3d [at pp.] 633–639 ('special circumstances').) However, the contrary conclusion is supported on the grounds that section 1021.5 codifies whatever equitable discretion is delegated to the courts and that California courts have uniformly evaluated fee awards pursuant to the measure 'whether or not the statutory criteria have been met.' (*Baggett v. Gates* [(1982)] 32 Cal.3d [128,] 142 [185 Cal.Rptr. 232, 649 P.2d 874]; . . . see also *Schmid v. Lovette* (1984) 154 Cal.App.3d 466, 473–475 [201 Cal.Rptr. 424]; but see *Bartling v. Glendale Adventist Medical Center* (1986) 184 Cal.App.3d 97, 104 [228 Cal.Rptr. 847], directing a trial court to consider a potential claim of special circumstances.) Accordingly, we read 'may' in section 1021.5 as simply signifying that a court has discretion to act *within* the criteria of section 1021.5." (*City of Sacramento v. Drew, supra,* 207 Cal.App.3d at p. 1297, fn. 3.)

We note here that the trial court did not articulate or rely upon any "special circumstances" in concluding that plaintiff had failed to show that the award was in the "interest of justice." Nor does CHA refer to the "special circumstances" exception on appeal.

"abuse" of discretion.' (*City of Sacramento v. Drew*[, *supra*,] 207 Cal.App.3d [at p.] 1297.)" (*Lealao*, at p. 25.)

Accordingly, the question before us is whether the trial court's refusal to award fees was consistent with the applicable law.

CHA does not dispute that this case involved enforcement of an important right affecting the public interest. Nor does CHA contend that a significant benefit was not conferred on the general public or on a large class of persons. Indeed, at the fee hearing, Judge McBride stated that he was "not too worried about those two [factors]." Nevertheless, the trial court found that the other prerequisites for the award—the successful party and private burden requirements—were not satisfied.

■ It is undisputed that relief obtained through a settlement may qualify a plaintiff as the prevailing party, even in the presence of a stipulation disclaiming liability on the merits. (See, e.g., *Santisas v. Goodin* (1998) 17 Cal.4th 599, 621–622 [71 Cal.Rptr.2d 830, 951 P.2d 399]; *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 671 [186 Cal.Rptr. 589, 652 P.2d 437]; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 174 [17 Cal.Rptr.2d 510]; Pearl, Cal. Attorney Fee Awards, *supra*, § 2.23, p. 58.)

B. *Prevailing Party*

■ Lyons contends that the court abused its discretion in determining that he was not a "successful party" because he succeeded in obtaining only injunctive relief and because he did not achieve the damage award that the court found to be his primary litigation objective. There is no question that Lyons was unsuccessful in obtaining damages for his asbestos exposure. He prevailed on only one of the six causes of action in his mandate petition. Lyons points out that the court could award attorney fees for that partial success. "It is well settled that partially successful plaintiffs may recover attorney fees under section 1021.5. (See 1 Manaster & Selmi, Cal. Environmental Law & Land Use Practice (2005) § 13.10(3)(b), pp. 13–18 and cases cited; Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 2004) § 2.19, pp. 49–50 and cases cited.) ' "[A] party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of the section. [Citations.]" (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 846 [216 Cal.Rptr. 649].) Rather, "when a plaintiff is successful within the meaning of the section, the fact that he or she has prevailed on some claims but not on others is a factor to be considered in determining the *amount* of the fee awarded." ' (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1019 [113 Cal.Rptr.2d 625].)" (*Bowman, supra,* 131 Cal.App.4th at pp. 177–178, italics added.)

The "successful party" concept is not so narrow as the court's clarification suggests. (See *Bowman, supra,* 131 Cal.App.4th at p. 178.) "In order to effectuate the purpose of section 1021.5, courts 'have taken a broad, pragmatic view of what constitutes a "successful party." ' (*Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 565.) A 'successful' party means a 'prevailing' party (*id.* at p. 570), and ' " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit.' " ' (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1292 [240 Cal.Rptr. 872, 743 P.2d 932], italics added.)" (*Bowman,* at p. 178.)

Although the significance of the issue resolved by the injunction—that of CHA's compliance with asbestos laws and regulations relating to testing, notice and training—was a matter for the trial court's judgment, the trial court apparently agreed that such relief "resulted in the enforcement of an important right affecting the public interest" and conferred a "a significant benefit . . . on the general public or a large class of persons." (§ 1021.5; *Bowman, supra,* 131 Cal.App.4th at pp. 176–177; *Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors, supra,* 79 Cal.App.4th at p. 511.)

The trial court's conclusion that Lyons could not be considered a successful party because he did not accomplish his "primary" litigation aim "is based on language in 'catalyst' cases, where the issue is whether a party who has not obtained *any* judicial relief is nevertheless entitled to fees. (See generally *Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 560 [fees can be awarded in that situation if the defendant has changed its behavior as sought in the litigation].) In such cases, 'an award of attorney fees may be appropriate where "plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought . . . ." ' (*Westside Community for Independent Living, Inc. v. Obledo, supra,* 33 Cal.3d at p. 353; italics added and deleted.)" (*Bowman, supra,* 131 Cal.App.4th at p. 178, italics added.)[9] This, however, is not a "catalyst" case. Lyons obtained, through a final judgment entered by the court in this action, injunctive relief consisting of employee, tenant and

---

[9] "Whether a party has prevailed for purposes of an award of fees depends on the impact of the action, not the manner in which the action is resolved. [(*Folsom v. Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 685.)] If the party has obtained some relief from the conditions originally challenged and if that relief is attributable in some way to the lawsuit, then that party is the prevailing party. [Citation.]" (Pearl, Cal. Attorney Fee Awards, *supra,* § 2.15, p. 43.) "In *Folsom,* the court directed the trial courts to look at the appropriate benchmark situations sought to be affected by the lawsuit, then to look at how the situations had changed, and then to examine the role the litigation played in making the changes between the two situations. [(*Folsom,* at p. 685, fn. 31.)] If the plaintiffs can show that the litigation 'was demonstrably influential' in obtaining a change in the conditions challenged in the lawsuit, then they are the successful parties. [(*Id.* at p. 687; [citations].)]" (Pearl, Cal. Attorney Fee Awards, *supra,* § 2.16, p. 47.)

contractor notification; employee training; and asbestos testing and monitoring for three years for not only the hospital and medical building, but also for other buildings owned by CHA. Moreover, the trial court's focus on the "primary relief" sought was misplaced for other reasons as well.

In *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231 [261 Cal.Rptr. 520] (*Sokolow*), the Court of Appeal reversed an order denying attorney fees under section 1021.5 to the plaintiffs, who had sued the mounted patrol of San Mateo County, the county, and others for sex discrimination. The trial court had denied fees on the ground that the plaintiffs were not the "prevailing party" as they had not succeeded in obtaining either the "primary relief" they sought—an injunction compelling the mounted patrol of San Mateo County to admit Sokolow and other qualified women to membership, or the "secondary relief" they sought—an injunction prohibiting the county from maintaining any affiliation, formal or informal, with the mounted patrol. (213 Cal.App.3d at p. 242.) Rather, they had obtained a ruling granting a permanent injunction requiring the mounted patrol and the county to sever their unconstitutional relationship and obtained a concession from the county ending the patrol's informal "monopoly" on equestrian search and rescue in the county and opening the opportunity to engage in such rescue activities to any qualified person. (*Id.* at pp. 244–245.)

In *Sokolow, supra,* 213 Cal.App.3d at page 245, footnote 10, the appellate court rejected the trial court's focus on the "primary relief" or "central issue" test and instead recognized that the United States Supreme Court in *Texas Teachers v. Garland School Dist.* (1989) 489 U.S. 782 [103 L.Ed.2d 866, 109 S.Ct. 1486], had "definitively adopted the 'significant issue' test" under federal statutes as restated in *Hensley v. Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 103 S.Ct. 1933]: " ' "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." ' [Citations.]" (*Sokolow*, at p. 245, fn. 10.) The Court of Appeal found that the plaintiffs were independently entitled to attorney fees under section 1021.5, and that the trial court's rationale that plaintiffs were not the prevailing party was "entirely unconvincing, particularly when viewed in the light of the court's decision on the merits" (*Sokolow*, at p. 246), as plaintiffs had succeeded in obtaining a decision that the county was significantly involved with the mounted patrol; that so long as the relationship existed, bylaws limiting membership to males only violated appellants' constitutional and federal statutory rights; and that the county must sever all significant involvement with mounted patrol activities. (*Id.* at pp. 246–247.)

Here, too, Lyons succeeded in obtaining relief on a "significant" issue in the action. The trial court abused its discretion in determining that Lyons was not a prevailing party where he succeeded on a "significant" issue in the litigation.

### C. Necessity and Financial Burden of Private Enforcement

The trial court also denied attorney fees on the ground that Lyons "failed to demonstrate that a fee award is appropriate because of the necessity and financial burden of private enforcement."

■ "Under the private burden prong of section 1021.5, fees are recoverable ' "when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' " ' (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 941 [154 Cal.Rptr. 503, 593 P.2d 200].) 'If the enforcement of the public interest is merely "coincidental to the attainment of . . . personal goals" [citation] or is "self serving," [citation], then this requirement is not met.' (*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 750–751 [246 Cal.Rptr. 285].)" (*Bowman, supra,* 131 Cal.App.4th at p. 181.) Stated otherwise, "The private attorney general doctrine . . . was not intended to reward litigants motivated by their own pecuniary interests who only coincidentally protect the public interest. [Citations.]" (Pearl, Cal. Attorney Fee Awards, *supra,* § 4.34, pp. 123–124.)

According to a leading California treatise on the subject, "[t]his requirement really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." (Pearl, Cal. Attorney Fee Awards, *supra,* § 4.31, p. 117.)

**1.** The "necessity" of the private enforcement factor " ' "looks to the adequacy of public enforcement and seeks economic equalization of representation in cases where private enforcement is necessary." ' [Citations.]" (*Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 639 [280 Cal.Rptr. 329] (*Committee to Defend Reproductive Rights*).)

Here, the trial court concluded that the need for private enforcement was "questionable" because a parallel prosecution of defendant achieved the same result—a stipulated injunction. We are convinced that on this record, the trial court abused its discretion in so finding.

In *Committee to Defend Reproductive Rights, supra,* 229 Cal.App.3d 633, the plaintiffs, without first contacting the district attorney, filed an action alleging false advertising and unfair business practices (Bus. & Prof. Code, § 17200) against the defendant clinic for fraudulently advertising its services as a medical center providing abortion counseling and referral when it was not a medical facility and did no counseling other than advocating against abortion. (229 Cal.App.3d at p. 636.) Four months later the San Francisco District Attorney filed a similar, but not identical, action. The cases were consolidated. After a judgment against the defendant, the plaintiffs requested attorney fees pursuant to section 1021.5. The trial court denied the plaintiffs fees on the ground that the plaintiffs' action was not necessary because the district attorney had filed a parallel action. (229 Cal.App.3d at pp. 636–637.) We reversed, concluding that the plaintiffs were not barred from recovery of attorney fees by reason of the government's participation in the litigation. We remanded the issue to the trial court, instructing the court to consider the following in determining whether the services of the plaintiffs were necessary: "(1) Did the private party advance significant factual or legal theories adopted by the court, thereby providing a material non de minimis contribution to its judgment, which were nonduplicative of those advanced by the governmental entity? (2) Did the private party produce substantial evidence significantly contributing to the court's judgment which was not produced by the governmental entity, and which was neither duplicative of nor merely cumulative to the evidence produced by the governmental entity?" (*Id.* at pp. 642–643.)

On the record before us in this case, we believe these questions could only have been answered in the affirmative. It is undisputed that Lyons and counsel repeatedly sought to involve public authorities in prosecution of defendants. The record provides no reason to believe that there would have been any prosecution without plaintiffs' efforts. Not only did plaintiffs initiate the action that resulted in the district attorney becoming involved nearly a year after plaintiffs had first sought the district attorney's assistance, but they also shared with the district attorney the voluminous information they had obtained during a lengthy discovery process in plaintiffs' civil action. In addition, Lyons's counsel met with the prosecutor assigned to the case more than a dozen times to discuss the case and highlight the evidence and case law supporting the elements in the case the district attorney could bring against defendants. There is no indication in the record that the district attorney's office conducted any independent investigation or discovery in its action, and Lyons's counsel avers that he is aware of none. Lyons's contribution to the district

attorney's action was more than merely helpful or even substantial; it was necessary to the ultimate success of the public prosecution.[10]

Moreover, the injunction obtained by the district attorney in its action against defendants in many important respects was not duplicative of that subsequently obtained by Lyons. The district attorney's injunction enjoined defendants from violating title 8 California Code of Regulations section 1529. Section 1529 is focused on a building owner's responsibility to disclose and remove asbestos-containing materials before and during construction activities in a building and with the safety of workers, employees and others during construction. By contrast, the injunction obtained by Lyons addressed broader requirements under Health and Safety Code section 25914 et seq. (asbestos and hazardous substance removal contracts); title 8 California Code of Regulations sections 1509 (injury and illness prevention program), 3203 (same), 5203 (reporting use of regulated carcinogens) 5208 (occupational exposures to asbestos); Bay Area Air Quality Management District Regulation 11 (setting emission/performance standards for hazardous pollutants, including asbestos); and title 42 United States Code section 7402 (air quality and emissions limitations). Indeed, title 8 California Code of Regulations section 5208 specifically provides that it does *not* apply to most construction work, as "[e]xposure to asbestos in construction work other than spraying is covered by [California Code of Regulations,] title 8, Section 1529"—the provision referenced in the district attorney's injunction.[11] The only other remedy provided in the district attorney's injunction was the $10,000 fine against English for false statements and illegal disposal of hazardous waste.

Remedies obtained through Lyons's injunction required CHA to provide asbestos notice to current and new employees and tenants, whether or not

---

[10] See Pearl, California Attorney Fee Awards, *supra,* section 4.32, at page 118, discussing *Committee to Defend Reproductive Rights, supra,* 229 Cal.App.3d 633 and *Sierra Club v. Contra Costa County* (1992) 10 Cal.App.4th 1212, 1224 [13 Cal.Rptr.2d 182]. Compare with *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563 [30 Cal.Rptr.2d 581], finding the private party neither offered nonduplicative theories nor produced nonduplicative evidence that contributed significantly to the judgment. The *Ciani* court refused to consider whether similar results would have been obtained "but for" the plaintiff's contribution and whether private counsel provided "substantial assistance" to the state. The first was subsumed within the determination that the dispositive legal issues were fully advanced by the state and the second suggestion was rejected because it would dilute the "necessary activity" test, into a "helpful activity" test. (*Id.* at p. 573.)

[11] Title 8 California Code of Regulations section 5208, provides in relevant part: "Asbestos. [¶] (a) Scope and application [¶] (1) This section applies to all occupational exposures to asbestos in all industries covered by the California Occupational Safety and Health Act [(Cal-OSHA)], except as provided in subsection (a)(2) and (3) of this section. [¶] (2) This section does not apply to construction work as defined in Section 1502, except for the spraying of asbestos containing material in subsection 5208(f)(1)(J). (Exposure to asbestos in construction work other than spraying is covered by Section 1529)."

construction was occurring; provide asbestos awareness training to its custodians and engineers; post notices during construction about the dangers of exposure to asbestos fibers; and report to the Division of Occupational Safety and Health Standards of the Department of Industrial Relations if asbestos is disturbed. In addition, the permanent injunction required CHA to retain and pay for a certified asbestos consultant to monitor CHA's compliance and to report annually to the court for the next three years. There is no provision for supervision in the district attorney's injunction. Although there may be areas of overlap between the two injunctions, they are fundamentally non-duplicative in the circumstances they cover and the relief they provide.

We believe, in the circumstances presented and on the record before us, that the trial court abused its discretion in denying fees on the ground that the need for private enforcement of the asbestos laws was "questionable."

**2.** The trial court also determined that Lyons had failed to demonstrate that a fee award was appropriate "because of the necessity and financial burden of private enforcement." In so finding, the court articulated and applied an erroneous test, stating: "The test is whether the achievement of the public benefit outweighs plaintiff's personal stake in the outcome. Here it does not." The court then proceeded to find that the fees and costs incurred were "primarily directed" toward recovery of money damages on the arbitrated claims, and that Lyons's "personal stake in the outcome of [the damage claims] was quite substantial and included a demand for punitive damages."

■ As stated above, "[u]nder the private burden prong of section 1021.5, fees are recoverable ' "when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' " ' (*Woodland Hills Residents Assn., Inc. v. City Council*[, *supra*,] 23 Cal.3d [at p.] 941.) 'If the enforcement of the public interest is merely "coincidental to the attainment of . . . personal goals" [citation] or is "self serving," [citation], then this requirement is not met.' (*California Common Cause v. Duffy*[, *supra*,] 200 Cal.App.3d [at pp.] 750–751.) The personal interests involved may 'include specific, concrete, nonfinancial interests' . . . . However, a party can be expected to have some concrete personal interest in the issue being litigated (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321, fn. 11 [193 Cal.Rptr. 900, 667 P.2d 704]) . . . ." (*Bowman, supra,* 131 Cal.App.4th at p. 181; see also Pearl, Cal. Attorney Fee Awards, *supra,* § 4.34, p. 120.) Nor does the fact that the case was pursued on a contingency fee basis undercut a plaintiff's attorney fees claim, particularly where the plaintiff is responsible for substantial costs. (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors, supra,* 79 Cal.App.4th at p. 522; see also *Lolley v. Campbell* (2002) 28 Cal.4th 367, 372–373 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [fee recovery even where no obligation to pay fees "incurred"].)

A pecuniary interest in the outcome of the litigation is not disqualifying. "If the party claiming fees has a pecuniary interest in the outcome of the lawsuit, the issue is whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit." (Pearl, Cal. Attorney Fee Awards, *supra*, § 4.34, p. 121; accord, *Baggett v. Gates, supra,* 32 Cal.3d at p. 143 [police officers challenging reassignment to a lower-paying position without proper hearing enforced basic procedural rights, although it might not have resulted in any pecuniary benefit to the plaintiffs]; *Otto v. Los Angeles Unified School Dist.* (2003) 106 Cal.App.4th 328, 332–333 [130 Cal.Rptr.2d 512] [financial burden of establishing right to administrative appeal from district procedure resulting in adverse material in personnel file exceeded the plaintiff's personal stake as there was no guarantee the plaintiff would ever recover any financial benefit]; *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 846–847 [218 Cal.Rptr. 704] [financial burden of prosecuting case out of proportion to the economic benefit].)

On the other hand, "[t]he private attorney general doctrine . . . was not intended to reward litigants motivated by their own pecuniary interests who only coincidentally protect the public interest. [Citations.]" (Pearl, Cal. Attorney Fee Awards, *supra*, § 4.34, pp. 123–124, and cases there cited.)

"[I]n comparing the cost of litigation to the plaintiffs' stake in the matter, we do not look at the plaintiffs' *actual* recovery after trial, but instead we consider 'the *estimated value* of the case at the time the vital litigation decisions were being made . . . .' (*Los Angeles Police Protective League* v. *City of Los Angeles* [(1986)] 188 Cal.App.3d [1,] 9–10 [232 Cal.Rptr. 697], italics added [(*Los Angeles Police Protective League*)].) In other words, the inquiry looks forward from the outset of counsel's vital litigation decisions, rather than backward after judgment. This is because the purpose of section 1021.5 is to encourage public interest litigation by offering the 'bounty' of a court-ordered fee. (188 Cal.App.3d at p. 10), and the focus of that incentive is on the point in time when vital litigation decisions are being considered." (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1414 [1 Cal.Rptr.2d 459] (*Beasley*).)

*Los Angeles Police Protective League, supra,* 188 Cal.App.3d 1, and *Beasley, supra,* 235 Cal.App.3d 1407, each adopted a two-step process for determining the "estimated value" of the case. *Beasley* described that process as follows: "First, the court must determine the monetary value of the 'gains actually attained' by the successful litigants. Second, the court 'must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made . . . .' (*Los Angeles Police Protective League, supra,* 188 Cal.App.3d at p. 9.) This 'discount' is essential because of the purpose of encouraging public interest litigation as of

the time vital litigation decisions are being considered. Thus, for example, if the plaintiffs had only a one-third probability of ultimate victory, the estimated value of the case was only one-third the actual recovery. (*Ibid.*)

"Once estimated value is determined, it is compared to actual litigation costs. In general, a fee award will be appropriate unless estimated value 'exceeds by a substantial margin the actual litigation costs.' ([*Los Angeles Police Protective League, supra,*] 188 Cal.App.3d at p. 10.) In other words, unless the estimated value of the case was sufficient to absorb actual litigation costs and still provide an incentive to litigate, fees may be awarded under section 1021.5.

"Also, the financial burden criterion is interrelated with the other pertinent criteria under section 1021.5. If public benefits are very significant, it is more important to encourage litigation, and thus it may be appropriate to award fees under section 1021.5 'even in situations where the litigant's own expected benefits exceed its actual costs by a substantial margin.' (*Los Angeles Police Protective League, supra,* 188 Cal.App.3d at p. 10.) In contrast, if public benefits are modest, 'the courts should award fees only where the litigant's own expected benefits do not exceed its costs by very much (or possibly are even less than the costs of the litigation).' (*Ibid.*)

"Thus, the following rule may be extrapolated from the *Los Angeles Police Protective League* opinion: If the estimated value of a class action common fund recovery, determined as of the time the vital litigation decisions were being made, does not exceed actual litigation costs by a substantial margin, the financial burden of private enforcement is such as to make it appropriate to award attorney fees under section 1021.5. In contrast, if estimated value is substantially more than actual litigation costs, there should be no award under section 1021.5 unless public benefits are very significant." (*Beasley, supra,* 235 Cal.App.3d at pp. 1414–1415.)

Following *Beasley,* the appellate court in *Notrica v. State Comp. Ins. Fund* (1999) 70 Cal.App.4th 911, 955 [83 Cal.Rptr.2d 89], discussed the method for assessing whether the attorney fees incurred by the party seeking fees were in proportion to that party's individual stake in the litigation. The jury had awarded compensatory damages in the net amount of $325,994 and punitive damages of $20 million. The trial court awarded attorney fees of $300,000. (*Id.* at p. 920 & fn. 2.) On appeal, the judgment was affirmed, except that the $20 million award was reversed and remanded subject to the plaintiff's acceptance of a reduction in the punitive damages to $5 million. (*Id.* at p. 956.) In rejecting a financial burden proportionality challenge to the fee award, the appellate court stated: "In assessing this ratio, the court must look at the estimated value of the case when the critical litigation decisions were being

made, not the actual recovery after trial. (*Beasley*[, *supra,*] 235 Cal.App.3d [at p.] 1414.) Notrica alleged in its complaint that it had suffered proximate damages of $100,000 or more, asking leave to allow amendment of the number. This disparity between damages and some $300,000 in attorney fees satisfies the purpose of Section 1021.5 to encourage litigation in the public interest by covering such fees. (235 Cal.App.3d at p. 1414.)" (*Notrica v. State Comp. Ins. Fund,* at p. 955.)

In weighing only the public benefit against the plaintiff's personal stake, the court below applied an erroneous test. The private financial burden test does not require a comparison of public benefits achieved to the plaintiff's personal stake in the case. Rather, it mandates a comparison between the estimated value of the plaintiff's individual stake in the action (which may be nonpecuniary) and the cost of the litigation.

We recognize that the statutory criteria for a fee award under section 1021.5 are somewhat interrelated. (Pearl, Cal. Attorney Fee Awards, *supra,* § 4.41, p. 131.) The appellate court in *Beasley, supra,* 235 Cal.App.3d 1407, observed that the financial burden criteria could be impacted by "other pertinent criteria under section 1021.5" (*Beasley,* at p. 1415.) As described in *Beasley,* the public benefit factor comes into play *after* the court has determined whether expected personal benefits exceed the actual costs of litigation. Whether the litigant has achieved a "modest" or a "very signifi-cant" public benefit will impact the fee award where the costs of litigation do not significantly exceed the expected personal benefits. (*Id.* at p. 1415.) In a case such as this, where litigation costs greatly exceeded Lyons's expected personal benefit, and where the issue of "significant benefit" to the public appears to have been conceded by CHA and recognized by the court, the denial of attorney fees based on a weighing of the public benefit versus the plaintiff's personal stake was erroneous.

█ We conclude that the trial court erred in looking at the damages plaintiffs sought in their tort action, while failing to discount such sum by the likelihood of success on those claims and by "what the plaintiffs reasonably hoped to achieve." (*Beasley, supra,* 235 Cal.App.3d at p. 1416.) Had the trial court compared the estimated value of Lyons's personal stake in the matter to the actual litigation costs to determine whether Lyons had sufficient personal incentive to bring the litigation notwithstanding the costs, it could not reasonably have concluded other than that the litigation costs far exceeded the estimated value of the case. Indeed, Lyons was told this at the outset by several attorneys who refused to take the case. Both Lyons's declaration and that of his counsel aver that they knew they were unlikely to achieve success on Lyons's tort damages claims. Moreover, Lyons continued to pursue the

injunctive relief cause of action even after the arbitrator denied him any recovery on the tort claims and he no longer had any personal stake in the outcome.

Actual litigation costs were significant. Attorney fees and costs were approximately $1 million. The court found that "[t]he fees and costs incurred in this case were primarily directed at the recovery of damages on the claims that were arbitrated." This finding is relevant to the question of the *amount* of attorney fees to be awarded, not to the question of whether an award of fees was warranted under section 1021.5.

## D. *Interests of Justice*

The trial court concluded that "[p]laintiff has not established that the interests of justice require that defendant pay his fees." CHA seizes upon this finding as an independent basis upon which to support the trial court's denial of attorney fees.

CHA emphasizes that the Chinese Hospital is a private nonprofit institution, "dedicated to providing extensive charitable health care and services to the vulnerable and poor, not just in Chinatown, but throughout the greater San Francisco community. Within the last five years, the hospital has devoted an average of $2 million dollars per year to providing free medical care to San Francisco residents." CHA argues the public benefit of these services outweighs any public benefit obtained by the stipulated injunction.

CHA also challenges both the reasonableness of the amount of fees incurred and contends that Lyons was "not forthright" with the trial court in his fee calculation, failing to credibly set forth the allocation of attorney time and costs attributable to noncompensable tort claims for damages (Lyons claimed to have incurred approximately $80,000 in fees pursuing the tort claims in arbitration), and that of the claim for injunctive relief (which time Lyons claimed was spent on issues of law and fact "inextricably intertwined" with those of his tort damages claims).

These arguments must fail in view of the Supreme Court's recognition in *Press v. Lucky Stores, Inc., supra,* 34 Cal.3d 311, that "[s]ubdivision (c) of section 1021.5, which requires that 'such fees should not in the interest of justice be paid out of the recovery, if any' is inapplicable here since plaintiffs' action did not produce any monetary recovery." (*Id.* at p. 318, fn. 5.) Clearly, "the interest of justice" language of subdivision (c) was aimed at permitting the recovery of attorney fees even in circumstances where a monetary recovery was obtained, but should not "in the interest of justice" be the source of such fees. As Lyons obtained no monetary recovery, the "interest of justice" provision of subdivision (c) is not relevant.

██ Nor do the cases recognize the justifications posited by CHA for denying all fees to Lyons. Not only public entities and agencies, but also private defendants are often required to pay attorney fees pursuant to section 1021.5 where the statutory prerequisites are met. (See, e.g., *Graham v. DaimlerChrysler Corp., supra*, 34 Cal.4th 553 [section 1021.5 fee award against private automobile manufacturer]; *Beasley, supra*, 235 Cal.App.3d 1407 [section 1021.5 fee award against bank]; *Committee to Defend Reproductive Rights, supra*, 229 Cal.App.3d 633 [award against private counseling facility]; *Braude v. Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1000, 1010–1014 [223 Cal.Rptr. 914] [abuse of discretion to deny section 1021.5 attorney fees against nonprofit mutual benefit corporation].) Such a distinction between private and public defendants would be inconsistent with the purposes underlying section 1021.5. Where the statutory requisites are otherwise met, the fact that the entity from whom fees are sought is private and nonprofit does not warrant a denial of fees.

Nor do CHA's assertions that the amount of fees sought were "unreasonable" or that Lyons was "not forthright" in allocating his fees between the causes of action for tort damages and that seeking injunctive relief warrant the denial of fees. To the degree that Lyons may have incurred unreasonable fees litigating the case, the problem is self-correcting. On remand, the trial court will be charged with determining the *reasonable* hours spent to prosecute the successful claim. (*Hammond v. Agran, supra*, 99 Cal.App.4th 115, 133; see *Lealao, supra*, 82 Cal.App.4th 19, 26.)

Insofar as Lyons established he was entitled to an attorney fee award under the statutory criteria, the trial court here erred in requiring Lyons to shoulder the *additional* burden, not contemplated by the statute, of showing that the award of attorney fees was "in the interests of justice."

We conclude that in the circumstances presented, the trial court abused its discretion in denying Lyons an attorney fee award under section 1021.5. We express no opinion as to the amount of a reasonable fee in this action.

██ Lyons requests an award of his attorney fees on this appeal. We conclude that, as at the trial level, he is entitled to an award of attorney fees on appeal under section 1021.5. (See *Serrano IV, supra*, 32 Cal.3d 621, 637–639; *Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors, supra*, 79 Cal.App.4th at pp. 522–523 [successful appellant is entitled to a § 1021.5 attorney fee award for both the trial and appeal of the attorney fee issue itself].)

## Disposition

The order denying attorney fees to Lyons is reversed, and the cause remanded to the trial court to make an award of attorney fees and costs consistent with the views set forth in this opinion. Lyons is awarded his attorney fees and costs on this appeal. On remand, the trial court is directed to determine reasonable attorney fees in connection with this appeal.

Lambden, J., and Ruvolo, J.,[*] concurred.

Respondents' petition for review by the Supreme Court was denied May 24, 2006, S142372.

---

[*]Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.